## A97A1071. DeVINE v. THE STATE.
### (494 SE2d 87)

SMITH, Judge.

Billie Mack DeVine was charged by a Clarke County grand jury with two alternative counts of theft by taking, OCGA § 16-8-2, and three counts of perjury, OCGA § 16-10-70 (a). He was convicted on one count of theft by taking and one count of perjury. His motion for new trial was denied, and he appeals. Because the State failed to show venue on the theft by taking charge and failed to show the materiality of the underlying testimony on the perjury charge, we reverse.

The facts of this case are complex and in large part irrelevant to the issues presented here, but a brief overview is necessary. In 1992, Rodney Harold Helms died a resident of Fayette County, Georgia. In his will, he established a trust for his only child, Genelle Helms. DeVine, Rodney Helms's brother-in-law, is a resident of Tampa, Florida. DeVine was appointed executor and trustee by the Fayette County probate court and took possession of the estate and trust funds by order of that court. He placed the funds in two accounts in Tampa. In 1993, Genelle Helms set up a trust for her infant daughter, whose father was Robert Bryant.[1] In 1994, Genelle Helms and Bryant were murdered in Clarke County, her residence.

Genelle Helms's death set in motion extensive legal activity. DeVine offered her will for probate in Clarke County, and Bryant's family filed a caveat to the will. Bryant's family also brought an action seeking guardianship of the child, contending that Bryant and Helms were married at common law. During the course of these various legal proceedings, Bryant's family raised allegations that DeVine had misappropriated funds from the Rodney Harold Helms Trust. This prosecution followed.

1. DeVine was charged in Counts 1 and 2 of the indictment with theft by taking of more than $500 from the Rodney Helms Trust

---

[1] The child was born out of wedlock; Genelle Helms originally intended to place the child for adoption but then revoked the adoption.

between November 1992 and January 1994.[2] The jury acquitted DeVine of unlawfully acquiring the funds, as charged in Count 1 of the indictment, but found him guilty of unlawfully appropriating the funds after acquiring them, as charged in Count 2. At the close of the State's evidence, DeVine moved to dismiss both theft by taking counts of the indictment on the basis that the State had failed to prove venue by showing that he exercised control over the Rodney Helms Trust in Clarke County, Georgia.

The trial court found this question "troublesome" but declined to grant DeVine's motion to dismiss because the beneficiary of the trust fund resided in Clarke County.[3] The court analogized the situation to a kidnapping in which the abductor carries a victim through several states. The State contended that venue was established by the residence of Genelle Helms and her child in Clarke County, or by the general "connection — the nexus" with Clarke County. The State also contended that DeVine established venue in Clarke County by seeking to be appointed administrator of Genelle Helms's estate, and thus "furthering the fraudulent scheme" by attempting to conceal his theft from some other administrator. But none of these arguments meets the clear statutory requirements for venue in a prosecution for theft by taking.

OCGA § 16-8-11 provides: "In a prosecution under Code Sections 16-8-2 through 16-8-9 and 16-8-13 through 16-8-15, the crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft." On several occasions, this Court has addressed directly the question of venue under this Code section when the property at issue was funds on deposit rather than cash, a specific check, or other tangible property physically taken by a defendant. In *Stowe v. State*, 163 Ga. App. 535, 537 (4) (295 SE2d 209) (1982), a building contractor received a landowner's money in Clarke County in order to build a house in Madison County. He purchased materials for the house from a supplier in Franklin County but failed to pay the supplier in full, although sufficient funds to do so had been provided by the owner. The contractor was prosecuted in Franklin County for theft by taking of the owner's funds, and the State relied upon the contractor's partial payment of the supplier in Franklin County to establish venue.

This Court rejected the State's contention, observing that funds

---

[2] The second count of the indictment actually states that the theft by taking occurred between November 1992 and January 1992. But the trial court denied DeVine's motion to dismiss on this ground, and it is not enumerated as error.

[3] The trial court instructed the jury that the beneficiary's residence in Clarke County controlled on the issue of venue. DeVine also enumerates this jury instruction as error.

*properly* spent were not the object of the theft and could not form the basis of venue: "In theft by conversion cases, where the allegedly converted property is money, we see two basic options available to the state regarding venue. First, the state can proceed in the county where the accused received the money. There is sound authority that the accused exercised control over the money there. [Cits.] Second, the state can produce evidence tracing funds disbursed in one county (where the case is being prosecuted) back to the account or other source in the origin county, showing further that the funds were not disbursed in accordance with the contract provisions governing the use of the funds." Id. Because the State did not show that any funds were disbursed improperly in the county of indictment, venue was not proved. Id. at 538.

Compare *Queen v. State*, 210 Ga. App. 588, 589 (1) (436 SE2d 714) (1993), in which the defendant directed that the victims pay a sum of money by check to defendant's designated agent, who *physically* received the money in the relevant county. This receipt of the funds by an agent of the defendant designated for that purpose was sufficient to establish venue. See also *Collins v. State*, 170 Ga. App. 753, 754 (2) (318 SE2d 492) (1984) (city officials' conversion of city funds by means of checks drawn on and negotiated at banks in county sufficient to establish venue).

In this case, it is undisputed that Rodney Helms's will was probated in Fayette County, Georgia and that the Rodney Helms Trust funds were transferred directly from that county to bank accounts in Tampa, Florida. The first method of showing venue is thus foreclosed by the evidence. The State did not show any possession of the trust funds by DeVine in Clarke County, nor did it show any unlawful transfer of funds by DeVine from the trust to a recipient in Clarke County during the period alleged in the indictment, as required by *Stowe*, supra. The indictment did not accuse DeVine of theft by taking from Genelle Helms's estate, from her child, or from the trust established by Genelle Helms for the benefit of her child; it was limited in scope to the Rodney Helms Trust, which at all times was located in Florida. The State therefore has failed to show that DeVine "exercised control over the property which was the subject of the theft" in Clarke County. OCGA § 16-8-11.

The alternative theories proposed do not establish venue, either. As the relevant decisions make clear, it is not the residence of the beneficiary or rightful owner of the stolen funds which controls venue; otherwise venue could have been established in the county of residence of the victims in *Queen*, supra, without considering the point at which the defendants exercised control over the funds. Nor can a "nexus" or general factual connection with a county, as argued by the State, establish venue in contravention of the clear require-

ments of the relevant statute.

Finally, the State cannot establish venue by means of acts that are not an element of the crime charged, by merely alleging that the acts constituted an "ongoing effort" to conceal an already completed offense. While efforts to conceal a theft by taking may amount to the separate offense of concealing evidence of a crime, OCGA § 16-10-50 (a) (2), such actions do not form part of the crime of theft by taking. In *Purvis v. State*, 208 Ga. App. 653 (433 SE2d 58) (1993), we held that an individual who colluded with two others to conceal an earlier theft by taking was not guilty of theft by taking as an accomplice, a conspirator, or a party to the crime. "One guilty of violating OCGA § 16-10-50 would be classified as an accomplice after the fact at common law, and such an offender is not considered a party to the crime under OCGA § 16-2-20. At common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of an obstruction of justice." (Citations and punctuation omitted.) Id. at 654. It follows, therefore, that testimony regarding actions allegedly taken in Clarke County to conceal evidence of a crime, a separate offense, cannot be used to establish venue in Clarke County with respect to a theft by taking that occurred outside the county.

DeVine was indicted for theft by taking money from the Rodney Helms Trust, which at all times was located in the State of Florida. DeVine did not exercise any control over the trust funds in Clarke County, as required by the relevant statute, even if a Clarke County resident was ultimately the beneficiary of the trust.[4] When the defendant contests venue at trial and the evidence as to venue is conflicting, the State must prove venue as a jurisdictional fact beyond a reasonable doubt. *Loyd v. State*, 202 Ga. App. 1, 3 (2) (413 SE2d 222) (1991). Because the State failed to demonstrate the existence of venue in Clarke County beyond a reasonable doubt, DeVine's conviction of theft by taking must be reversed.

2. DeVine also challenges the sufficiency of the evidence to support his conviction for perjury under Count 5 of the indictment. In that count, DeVine was charged with committing perjury on November 22, 1994 in "mak[ing] a false statement to wit: when asked whether he had talked to notary public Laura J. DiBenedetto concerning her signature on the July 1993 will of Genelle DeAnne Helms, and whether he instructed Ms. DiBenedetto to lie if ques-

---

[4] While it is possible that DeVine briefly exercised control over the funds in Fayette County, when the probate court of that county released the funds for the creation of the trust, DeVine was not convicted of wrongfully acquiring the funds, but of unlawfully appropriating them after acquisition.

tioned about DiBenedetto's signature on that will, Billie Mack DeVine responded 'no.' "[5]

DeVine attacks the sufficiency of the evidence on three grounds: the requirement of corroboration of perjury, OCGA § 24-4-8; ambiguities in his testimony and that of the notary; and the immateriality of his testimony to the proceeding in which it occurred. We reverse because we conclude that the allegedly false testimony was immaterial to the issues presented in probate court hearing at which it was made.

The hearing at issue was held in the Clarke County Probate Court in the probate in solemn form of the will of Genelle Helms and the caveat interposed by Bryant's relatives. DeVine correctly points out that the self-proving affidavit signed by the notary was irrelevant to the hearing in question because the will was offered for probate in solemn form rather than as a self-proving will. As the probate judge noted during the hearing, "Georgia law doesn't require a notary unless you're doing a self-proving will. Two witnesses is all we require." See also OCGA §§ 53-2-40; 53-2-40.1. Moreover, at the beginning of the hearing, DeVine's counsel stated, "We'll stipulate and agree that [Genelle Helms's will] was not signed in the presence of a notary public."

DeVine contends that because the self-proving affidavit was irrelevant to the hearing at which he testified, any question and answer concerning an irregularity in the notary's signature on the self-proving affidavit was likewise irrelevant to the hearing on the probate in solemn form. We are constrained to agree.

"A person to whom a lawful oath or affirmation has been administered commits the offense of perjury when, in a judicial proceeding, he knowingly and willfully makes a false statement material to the issue or point in question." OCGA § 16-10-70 (a). "In other words, falsely swearing to an immaterial matter is not an indictable offense." *Wilson v. State*, 115 Ga. 206, 207 (1) (41 SE 696) (1902). Materiality for the purpose of this statute has been defined as "whether the alleged false statement could have influenced the decision as to the question at issue in the judicial proceeding in which the perjury is alleged to have been committed." *Hardison v. State*, 86 Ga. App. 403 (71 SE2d 525) (1952). Whether the notary here did or did not witness the testator's signature on a self-proving affidavit was irrelevant to consideration of the probate of a will in solemn form.

---

[5] DeVine was not charged with stating that the irregularity in the notary's signature did not in fact occur, or of making a false statement in connection with the affidavit itself. DeVine points out in his brief that he repeatedly acknowledged the irregularity in the notary's signature during the probate court hearing, at deposition, and upon earlier questioning by the Florida investigator.

Both witnesses to the will appeared and testified to the testator's signature.

This does not end our analysis, however, because even a false statement not directly material may be collaterally material for purposes of charging perjury if it is testimony " 'going to the credit of a witness[.]' [Cits.]" *Wilson*, supra at 208 (1) (earlier contradictory statements are material for assignment of perjury because complaining witness may be impeached thereby). Such testimony includes false statements that a witness "has not made a specified statement material in the case, that he has not expressed hostility to the defendant, that he has never been in prison." (Citations and punctuation omitted.) Id. A statement denying that a witness has an interest in or bias concerning the outcome of a case is admissible under OCGA § 24-9-68 and goes to that witness's credit. It thus may, if false, provide a basis for a charge of perjury. *Clackum v. State*, 55 Ga. App. 44, 49 (5) (189 SE 397) (1936) (false testimony of purported eyewitness for civil plaintiff that he had not spoken with plaintiff's attorney prior to trial material and chargeable as perjury).

In summary, our review of the relevant decisions indicates that even evidence not directly relevant to the issues on trial may still be material in the sense that it is admissible to impeach the witness or show his interest in the case in one of the statutorily prescribed ways, and therefore sufficiently material for the purpose of assigning perjury. But it also appears that the cases have limited this collateral materiality for purposes of perjury to those matters specifically provided for by statute: testimony disproving facts testified to by the witness, OCGA § 24-9-82;[6] prior contradictory statements relevant to his testimony and to the case, OCGA § 24-9-83; demonstrating bad character by specified methods, OCGA § 24-9-84; and evidence showing the witness's feelings or relationship to the parties, OCGA § 24-9-68.

Applying these principles to this case leads to the conclusion that the testimony complained of was not material for the purpose of assigning perjury. The underlying question of the propriety of the notary's signature was not material to the matters litigated in the hearing, the notary did not testify at that hearing, and DeVine's counsel conceded at the beginning of the hearing the only matter to which she could have testified. DeVine's testimony regarding what he told a non-witness was not itself material to the proceeding in which he testified, was not a proper method of demonstrating bad

---

[6] But it is not permissible to impeach a witness by disproving facts testified to regarding an immaterial matter or through prior inconsistent but immaterial statements, *Gilbert v. State*, 159 Ga. App. 326, 327-328 (2) (283 SE2d 361) (1981), and such statements therefore could not form a basis for a charge of perjury.

character, did not disprove any material fact, and did not show his feelings or relationship to any party. Under these circumstances, the State failed to meet its burden of proving that DeVine knowingly and wilfully made a false statement material to an issue or point in question at the November 22, 1994 hearing.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 13, 1997 — 

*Cook, Noell, Tolley & Wiggins, Edward D. Tolley, Ronald E. Houser,* for appellant.

*Harry N. Gordon, District Attorney, Richard L. Dickson, Assistant District Attorney,* for appellee.