**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 6, 2014**

# In the Court of Appeals of Georgia

A13A1660. DAVIS v. THE STATE.

DILLARD, Judge.

Following a bench trial, Bruce Davis was convicted of one count of theft by taking. Davis appeals his conviction and the denial of his motion for new trial, arguing that the State failed to prove that he intended to unlawfully appropriate the funds at issue and venue in Dodge County. Davis also maintains that the trial court erred in admitting parol evidence and in finding that he waived his right to a jury trial. Because the State failed to prove venue, we reverse Davis's conviction.

Construing the evidence to uphold the trial court's findings and judgment,[1] the record shows that in 2003, Davis owned a clothing manufacturing plant in Pennsylvania, but he was interested in moving the business to south Georgia. Toward

---

[1] *See Hammont v. State*, 309 Ga. App. 395, 395 (710 SE2d 598) (2011).

that end, Davis entered into agreements with officials representing Jeff Davis County, and ultimately moved his business to Hazlehurst, Georgia. And by June 2004, Davis leased a building in Hazlehurst, and his sweater manufacturing plant started production there. But shortly thereafter, Davis was unable to adequately fund the business, eventually abandoned it, and soon the plant ceased operations entirely.

Around the same time Davis began operating the business in Hazlehurst, he also started exploring the possibility of moving a trouser manufacturing business, which he allegedly agreed to purchase, from Florida to south Georgia. Consequently, Davis entered into discussions with local businessman James Pruett about relocating the Florida trouser plant to a facility that Pruett owned in the town of Eastman in Dodge County, Georgia.

On June 18, 2004, Davis and Pruett met in Eastman to discuss their plans, at which time Davis informed Pruett that he needed a loan in the amount of $350,000 to begin relocating the plant to Dodge County. And on June 22, 2004, the two signed several agreements in Eastman, including a lease, a promissory note documenting the $350,000 loan to Davis, and a security agreement, in which Davis pledged the trouser manufacturing plant's equipment as collateral for the loan.

Three days later, Pruett wired $350,000 from his bank account in Dodge County to Davis's bank account in the Atlanta area. But rather than using the loaned funds to relocate the trouser plant to Eastman, Davis used the $350,000 for various other business interests, including some related to the sweater manufacturing facility in Hazlehurst. In fact, Davis never relocated the Florida plant to Eastman, never made any rent payments pursuant to the lease agreement for Pruett's building, and never repaid the loan from Pruett. In addition, Pruett was unable to obtain the plant's manufacturing equipment that Davis pledged as collateral to secure the $350,000 loan.

Subsequently, Davis was charged, via indictment in Dodge County, with one count of theft by taking.[2] He pleaded not guilty, and later signed part of the indictment indicating that he was waiving his right to a jury trial. And prior to trial, Davis filed a motion to dismiss the indictment, arguing that Dodge County was not the proper venue. But after holding a hearing on the issue, the trial court found that venue was indeed proper in Dodge County and, therefore, denied Davis's motion.

---

[2] *See* OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.").

The matter then proceeded to a bench trial, during which Pruett and Roger Byrd, the person who put Pruett in contact with Davis, testified that Davis promised the $350,000 loan was for relocating the Florida trouser plant to Eastman. Additionally, the State presented similar-transaction evidence, recounting Davis's failed business venture in Hazlehurst and the fact that it resulted in Davis pleading guilty in Jeff Davis County to charges of theft by taking, making false statements, and conspiracy to defraud a political subdivision.

Davis testified in his own defense, claiming that he never agreed that the $350,000 loan was only to be used for relocating the Florida trouser plant. Instead, Davis asserted that the loan was to be used as working capital while the plant relocation was pending. And in support of this assertion, Davis pointed out that the promissory note and other agreements, which were admitted into evidence, contained no restrictions as to the use of the loaned funds. Davis also admitted that he did not own outright the equipment he pledged as collateral at the time he signed the security agreement, but claimed that his ownership status was never at issue.

Nevertheless, at the conclusion of the bench trial, the trial court found Davis guilty of theft by taking. And thereafter, Davis filed a motion for new trial, which the court denied. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the trier of fact's guilty verdict will be upheld "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] With these guiding principles in mind, we turn now to Davis's specific claims of error.

1. Davis first contends that the evidence was insufficient to support his conviction of theft by taking, arguing that the State failed to prove that he intended to unlawfully appropriate the $350,000 for his own use. We disagree.[6]

---

[3] *See, e.g.*, *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt. 2781, 61 LE2d 560) (1979).

[5] *Nassau v. State*, 311 Ga. App. 438, 440-41 (715 SE2d 837) (2011) (punctuation omitted).

[6] Although we ultimately must reverse the trial court's judgment for the reasons discussed in Division 2, *infra*, because Davis specifically contends that the evidence was insufficient to support his conviction, we must address that enumeration of error.

OCGA § 16-8-2, provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." And under this statute, the phrase "regardless of the manner in which the property is taken or appropriated" is a catch-all phrase "rendering our theft by taking statute broad enough to encompass theft by conversion, or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property."[7] Furthermore, in a case such as this, "when the alleged taking occurs when a defendant fails to perform under a contract with the victim, the real issue is whether the defendant

---

*See Lewis v. State*, 248 Ga. 566, 566 (1) (285 SE2d 179) (1981) (holding that the Court of Appeals cannot properly ignore an enumeration of error regarding insufficiency of evidence to support a conviction when contention was made that the evidence was insufficient even prior to exclusion of any improperly admitted evidence).

[7] *Bearden v. State*, 316 Ga. App. 721, 723 (1) (728 SE2d 874) (2012) (punctuation omitted); *see also Spray v. State,* 223 Ga. App. 154, 155 (1) (476 SE2d 878) (1996) (same).

accepted or retained the victim's money with no intention to satisfy his obligations under the contract."[8]

In the case *sub judice*, the indictment charged Davis with theft by taking in that "being in lawful possession of . . . $350,000, the property of James L. 'Jimmy' Pruett, Jr., did unlawfully appropriate said property with the intention of depriving [Pruett] of the property. . . ." And the evidence introduced during Davis's trial showed that after he received the wire transfer of $350,000, as a result of a lawful agreement and promissory note, he began dispersing the funds in a manner that was contrary to what he promised Pruett. In addition, Davis never moved the Florida trouser plant to Eastman, never repaid the loan, and did not actually own the manufacturing equipment that he agreed would serve as collateral for the loan.

Davis, nevertheless, argues that this evidence was insufficient to show that he intended to defraud Pruett. But intent may be found by the trier of fact "upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted."[9] And whether a

---

[8] *Bearden*, 316 Ga. App. at 723 (1) (punctuation omitted); *see also Smith v. State,* 265 Ga. App. 57, 59 (1) (592 SE2d 871) (2004) (same).

[9] *Bearden*, 316 Ga. App. at 723 (1) (punctuation omitted)*; see also Palmer v. State,* 243 Ga. App. 656, 657 (533 SE2d 802) (2000) (same).

defendant has "the requisite intent to commit a crime is a question for the [trier of fact]."[10]

Here, as noted *supra*, Davis never used the funds for relocating the Florida plant, as he promised, and secured the loan for the funds with equipment that he did not own. And given these circumstances, the trial court was authorized to infer that Davis, having lawfully obtained the $350,000 (via the loan from Pruett), acted with fraudulent intent in his use of the funds. Accordingly, the evidence was sufficient for the trial court to find him guilty of theft by taking.[11]

2. Davis also contends that the State failed to prove venue in Dodge County. We agree and, therefore, reverse his conviction.

---

[10] *Bearden*, 316 Ga. App. at 723 (1) (punctuation omitted); *Palmer,* 243 Ga. App. at 657 (same).

[11] *See Bearden*, 316 Ga. App. at 723-24 (1) (holding that evidence was sufficient to show that defendant intended to convert lawfully acquired funds for construction of homes for his own use, as required to support conviction for theft by taking, when, after defendant received checks, he abandoned respective projects without performing any work); *Cox v. State*, 275 Ga. App. 895, 895-96 (622 SE2d 11) (2005) (holding that evidence was sufficient to authorize jury to infer that defendant fraudulently converted money for his own use when he received the money but failed to use it for the specified purpose).

It is well established that venue is "a jurisdictional fact and is an essential element in proving that one is guilty of the crime charged."[12] Additionally, like every other material allegation in the indictment, "venue must be proved by the prosecution beyond a reasonable doubt."[13] And generally, a criminal action must be "tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence."[14]

In a prosecution for theft by taking, "the crime shall be considered as having been committed, and venue is thus established, in any county in which the accused

---

[12] *Davis v. State*, 322 Ga. App. 826, 827 (1) (747 SE2d 19) (2013) (punctuation omitted); *see also Jones v. State*, 272 Ga. 900, 901 (537 SE2d 80) (2000) (same).

[13] *Davis*, 322 Ga. App. at 827 (1) (punctuation omitted); *see also Jones*, 272 Ga. at 901 (same).

[14] *Bearden*, 316 Ga. App. at 724 (2) (punctuation omitted); *see also Chapman v. State,* 275 Ga. 314, 317 (565 SE2d 442) (2002) (same); Ga. Const. Art. 6, § 2, ¶ VI ("[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county."); OCGA § 17-2-2(a) ("Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law.").

exercised control over the property which was the subject of the theft."[15] And in cases such as this, where the unlawfully appropriated property is money, the State has two options for proving venue.[16] The State can proceed "in the county where the accused received the money,"[17] or it can produce evidence "tracing funds disbursed (*i.e.*, spent) in one county (where the case is being prosecuted) back to the account or other source in the origin county, showing further that the funds were not disbursed in accordance with the contract provisions governing the use of the funds."[18]

In the case *sub judice*, the trial court found—in its order denying Davis's motion to dismiss—that because the negotiation and execution of the contracts occurred at Pruett's offices in Dodge County, there were "significant contacts" establishing venue there. But as we have previously explained, it is not the residence

---

[15] OCGA § 16-8-11; *see also Naylor v. State*, 257 Ga. App. 899, 900 (572 SE2d 410) (2002).

[16] *See Naylor*, 257 Ga. App. at 900; *Stowe v. State*, 163 Ga. App. 535, 537 (4) (295 SE2d 209) (1982).

[17] *Naylor*, 257 Ga. App. at 900 (punctuation omitted); *see also Stowe*, 163 Ga. App. at 537 (4).

[18] *Naylor*, 257 Ga. App. at 900 (punctuation omitted); *see also Stowe*, 163 Ga. App. at 537 (4).

of "the beneficiary or rightful owner of the stolen funds which controls venue[.]"[19]

Nor can a nexus or general factual connection with a county, as argued by the State, "establish venue in contravention of the clear requirements of the relevant statute."[20] Indeed, the argument posited by the State and adopted by the trial court below "essentially disregards the applicable law: in a theft by deception case, 'the crime shall be considered as having been committed in any county in which *the accused exercised control over the property* which was the subject of the theft."[21]

And here, although the contracts were executed in Dodge County, there is no evidence that Davis exercised any control over the $350,000 until Pruett wired the funds into Davis's bank account located in metro Atlanta. Nor is there any evidence that Davis spent or disbursed any of the funds in Dodge County. Rather, the evidence shows that Davis used the money for his other business ventures, including the failed venture in Jeff Davis County. Given these circumstances, the State failed to establish

---

[19] *DeVine v. State*, 229 Ga. App. 346, 348 (1) (494 SE2d 87) (1997).

[20] *Id.* at 348-49 (1).

[21] *Davis* v. State, 322 Ga. App. at 828 (1); *see* OCGA § 16-8-11.

11

venue in Dodge County, and Davis's theft-by-taking conviction must be reversed.[22]

However, because the failure to establish venue "does not bar re-trial in a court where venue is proper and proven, the [S]tate is authorized to retry Davis in the proper venue."[23]

3. Davis further contends that the trial court erred in allowing Pruett and Roger Byrd to testify regarding promises that Davis made prior to the execution of, yet not incorporated into, the contracts regarding how the funds would be spent. Specifically, Davis argues that such testimony violates the parol-evidence rule. And because there

---

[22] *See Davis*, 322 Ga. App. at 827-28 (1) (holding that State failed to prove that venue for theft by deception charges was proper in Morgan County when evidence showed that funds were wired to defendant in Cobb County but defendant exercised no control over the funds in Morgan County); *Naylor*, 257 Ga. App. 900-01 (holding that State failed to prove venue in Fayette County, given that defendant resided in Florida, money was transferred into defendant's Florida bank account, and defendant did not spend any of the money in Fayette County); *DeVine*, 229 Ga. App. at 348-49 (1) (holding that State failed to prove venue in Clarke County because defendant exercised no control over trust's funds in that county). *Compare Gould v. State*, 273 Ga. App. 155, 156-57 (2) (614 SE2d 252) (2002) (holding that State established venue in Floyd County given evidence that, although the funds were transferred to defendant's foreign bank account, defendant resided in Floyd County and exercised control over funds from his Floyd County residence once those funds were transferred to his foreign bank account).

[23] *Davis*, 322 Ga. App. at 828 (1) (footnote and punctuation omitted); *accord Bradley v. State*, 272 Ga. 740, 744 (3) (533 SE2d 727) (2000).

12

is a possibility that this issue may arise again upon retrial of this case, we will address it now in this opinion.

It is, of course, axiomatic that the admission of evidence is "committed to the sound legal discretion of the presiding judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion."[24] Furthermore, because this was a bench trial, "there is a presumption, in the absence of a strong showing to the contrary, that the trial judge sifted the wheat from the chaff, ignored illegal evidence and considered only legal evidence."[25]

And as previously noted, during Davis's trial, Pruett and Byrd testified that prior to the execution of the contracts, including the promissory note, Davis and Pruett agreed that the $350,000 loan was to be used *exclusively* for relocating the Florida trouser plant to Eastman. Davis objected to this testimony, arguing that none of the contracts specified how the funds were to be used, and that several of the contracts contained merger clauses; thus, he contends that any testimony regarding

---

[24] *Jones v. State*, 318 Ga. App. 26, 31 (2) (733 SE2d 72) (2012) (punctuation omitted); *see also McBee v. State*, 228 Ga. App. 16, 16 (491 SE2d 97) (1997) (same).

[25] *Futch v. State*, 316 Ga. App. 376, 382 (2) (730 SE2d 14) (2012) (punctuation omitted); *see also Haas v. State*, 146 Ga. App. 729, 733 (247 SE2d 507) (1978) (same).

discussions or promises made before the execution, but not incorporated into the executed contracts, violates the parol-evidence rule and were therefore inadmissible. The trial court overruled Davis's objection and allowed the testimony by both witnesses.

As noted *supra*, Davis contends that Pruett and Byrd's testimony that Davis agreed that the $350,000 would be used exclusively for relocating the Florida plant should not have been admitted given that (1) this agreement was not mentioned in any of the executed contracts and (2) several of those agreements contained merger clauses. And in support of this argument, Davis relies on the Supreme Court of Georgia's decision in *First Data POS, Inc. v. Willis*.[26] In that case, the sellers of a corporation sued the buyers, alleging that the buyers' pre-contractual misrepresentations amounted to theft by deception and, thus, a violation of the civil RICO Act.[27] But our Supreme Court affirmed a grant of summary judgment dismissing the sellers' *civil* RICO claim, holding that "[a]s a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual

[26] 273 Ga. 792 (546 SE2d 781) (2001).

[27] *Id.* at 792-93.

14

representations."[28] Davis now argues that the holding in *First Data POS, Inc.* should be extended to apply to this *criminal* matter. We decline to do so.

It is well established that Georgia law "favors the admission of any relevant evidence, no matter how slight its probative value, and even evidence of questionable or doubtful relevancy or competency should be admitted and its weight left to the jurors."[29] But the purpose of the parol-evidence rule is "to bring finality to an agreement, except when ambiguity requires that the language of the contract be explained but not varied."[30] Essentially, in contrast to our State's normally lenient case law defining what constitutes relevant evidence, under the parol-evidence rule, except in certain circumstances,[31] once two parties in privity have documented their

[28] *Id.* at 796 (2).

[29] *Granger v. State*, 320 Ga. App. 580, 585 (3) (740 SE2d 313) (2013) (punctuation omitted); *see also Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360) (1980) (same).

[30] *ESI Companies, Inc. v. Fulton County*, 271 Ga. App. 181, 184-85 (1) (c) (609 SE2d 126) (2004); *accord Albany Fed. Sav. & Loan Ass'n v. Henderson*, 198 Ga. 116, 143 (31 SE2d 20) (1944).

[31] It is worth noting that even in the context of civil litigation, "[p]arol evidence is admissible to establish fraud in the inducement, even though there is an entirety or merger clause in the written contract, where the complaining party does not elect to stand on the contract but proceeds on fraud." *Judge v. Wellman*, 198 Ga. App. 782, 783 (403 SE2d 76) (1991); *accord City Dodge, Inc. v. Gardner*, 232 Ga. 766, 768

15

agreement in a written contract, our law deems their pre-contractual negotiations irrelevant.[32]

For obvious reasons, criminal law is less concerned with the finality of agreements between two private parties. Rather, the purpose of a criminal trial and the evidence admitted therein is "to determine whether the defendant is guilty beyond a reasonable doubt of the offense he is charged with committing."[33] And in a theft-by-taking case, this requires the State to submit "proof of (1) an unlawful taking of the property of another (2) with the intent of depriving him of it."[34] Statements made by

---

(208 SE2d 794) (1974).

[32] *See Stonecypher v. Georgia Power Co.*, 183 Ga. 498, 501 (1) (189 SE 13) (1936) ("The rule of law that the terms of a valid written agreement which is complete and the terms of which are not ambiguous cannot be contradicted, added to, altered, or varied by parol agreements, is a settled legal proposition. It was well established at common law, and has been embodied in the statutory law of this State. It has also been consistently followed with approval by the courts of last resort in this and other jurisdictions. The purpose of the rule is to establish the finality of written contracts, and its wisdom is not a debatable question.").

[33] *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004).

[34] *Green v. State*, 223 Ga. App. 467, 468 (1) (477 SE2d 895) (1996); *see also* OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated.").

16

Davis prior to the execution of the contracts, then, are certainly relevant to proving whether he intended to deprive Pruett of the $350,000. Thus, while we fully recognize that we are in somewhat uncharted jurisprudential waters as far as Georgia law is concerned, this Court does not agree that the parol-evidence rule should be extended to a criminal matter in this particular context.[35] Accordingly, we conclude that the

---

[35] *See, e.g., U.S. v. Martel*, 792 F2d 630, 635 (I) (A) (7th Cir. 1986) (holding that in a criminal conspiracy to defraud case "[t]he restrictions embodied in the parol evidence rule simply are not applicable here."); *Mesch v. U.S.*, 407 F2d 1286, 1288 (10th Cir. 1969) (holding that the parol-evidence rule does not apply to criminal prosecutions of mail fraud and that "oral testimony is admissible to show the presence of fraud, despite proof of the execution of contracts relating to the transaction"); *Gibson v. U.S.*, 268 F2d 586, 589 (D.C. Cir. 1959) (holding that "[t]he people prosecuting for a crime committed in relation to a contract are not parties to the contract and are not bound by it.") (punctuation and citation omitted); *People v. Frankfort*, 251 P2d 401, 414 (Ca. App. 1952) ("The people prosecuting for a crime committed in relation to a contract are not parties to the contract and are not bound by it. They are at liberty in such a prosecution to show the true nature of the transaction.") (punctuation and citation omitted); *Jackson v. People*, 18 NE 286, 288 (Ill.1888) ("This is not a civil suit upon a contract . . . , but [a prosecution] upon the fraud alleged to have been committed in obtaining the consent of [victim] to part with his money, and neither rule contended for can therefore have any application to this case . . . If the rules contended for are to be applied in such case, every person selling property and obtaining money therefor by false pretenses can escape the penalty provided by law, by simply inducing the purchaser to accept a bill of sale in which some warranty may be inserted, and thus, by a show of fairness, be enabled the more effectually to perpetrate the fraud . . . Careful as the law is of the rights of persons, we cannot lend our sanction to the application of the rules where it would be attended with such consequences."); *State v. Hubschman*, 45 A2d 316, 317 (N.J. 1946) (holding that the "[parol-evidence] rule advocated is not applicable in a criminal case where the single question to be determined is whether certain false representations

17

trial court did not abuse its discretion in admitting Pruett and Byrd's testimony regarding Davis's pre-contractual statements.[36]

4. Finally, Davis contends that the trial court erred in finding that his signature on the indictment constituted a knowing and intelligent waiver of his right to a jury trial. However, because we reverse Davis's conviction for failure to establish venue, we need not address this issue except to note that should the State decide to retry

---

were made, were relied upon and resulted in money loss."); *State v. Hornbeck*, 178 P3d 847, 854 (N.M. App. 2008) ("We hold that evidence outside of the terms of the promissory note was properly admitted [because] . . . the parol evidence rule does not apply to criminal proceedings . . . [and] a long-standing and well-recognized exception to the parol evidence rule is that it has no application to situations where an agreement is induced or procured by fraud."); *State v. Cooke*, 371 P2d 39, 42 (Wa. 1962) (holding that "although a 'merger clause' may bar one from asserting false oral representations in an action upon a written contract entered into at arm's length, it does not prevent the state from enforcing a criminal statute enacted for the public's protection."); *cf.* OCGA 16-17-6 ("The trial court shall not be bound in making such determination by the parol evidence rule or by any written contract but shall be authorized to determine exactly whether the loan transaction includes the use of a scheme, device, or contrivance and whether in reality the loan is in violation of the provisions of subsection (a) of Code Section 16-17-2 based upon the facts and evidence relating to that transaction and similar transactions being made in the State of Georgia.").

[36] This Court is not aware of any reported decisions, and the parties direct us to none, where an appellate court excluded parol evidence in the context of a criminal proceeding. Nevertheless, we are not prepared to say, and we do not say, that the parol-evidence rule will never apply in any criminal context. We leave that question for another day.

18

Davis, he may revoke his alleged waiver of a jury trial, so long as he does so in a manner that does not substantially delay or impede the cause of justice.[37]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and McMillian, J., concur.*

---

[37] *See Cain v. State*, 102 Ga. 610 (29 SE 426, 426-427) (1897) ("The right of trial by jury in criminal prosecutions is a great constitutional right, of which the accused cannot be deprived except of his own accord. While he may voluntarily waive it, yet he may revoke such waiver by making timely application therefor. This right of revocation must be exercised in such season as not substantially to delay or impede the cause of justice."); *accord Leggett v. State*, 184 Ga. App. 398, 398 (1) (361 SE2d 546) (1987).