296 Ga. 643
FINAL COPY

S14A1342.  McDONALD v. THE STATE.

HUNSTEIN, Justice.

Appellant Steve McDonald was convicted of malice murder and other offenses in connection with the July 13, 2001 homicide of Kim Condry. Appellant now appeals, contending that his trial counsel rendered ineffective assistance and challenging the sufficiency of the evidence, the composition of the jury pool, and the trial court's refusal to allow him to represent himself at trial. Though we find no error in the verdicts, we do find error with respect to the trial court's merger of offenses, and we therefore must vacate and remand to the trial court for proper merger and resentencing.[1]

---

[1]Appellant and co-indictee Carol Sue Gibson were indicted by a Seminole County grand jury in October 2001 for malice murder, three counts of felony murder, armed robbery, false imprisonment, theft by taking, and possession of a firearm during the commission of a crime; Appellant was additionally charged with possession of a firearm by a convicted felon. At the conclusion of a jury trial held June 17-20, 2002, at which Gibson testified for the State under a plea deal, Appellant was convicted on all counts and was sentenced to life imprisonment for malice murder and two consecutive five-year terms, one for each of the firearm possession counts. The trial court purported to "merge" the three felony murder verdicts and the verdicts for armed robbery, false imprisonment, and theft by taking into the malice murder conviction. See Division 5, infra. Following the grant of an out-of-time appeal in May 2005, an untimely notice of appeal was filed, and the appeal was dismissed. A second out-of-time appeal was granted, and Appellant filed a motion

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In July 2001, Appellant and co-indictee Carol Sue Gibson devised a plan to rob a drug dealer. On the day of the crimes, the pair purchased handcuffs and duct tape from a K-Mart in Bainbridge, then drove to Dothan, Alabama, where they checked into an American Inn motel under a false name. Appellant drove Gibson to a local gambling house known as the Tree, where Gibson met the victim, Kim Condry, and asked about buying some marijuana. Condry took Gibson to his house, where he propositioned her for sex; she told him she wanted to go to a motel, and the pair proceeded to the American Inn. Once back in the motel room, Gibson summoned Appellant, who entered with a gun and ordered the victim to take off his clothes and get on the ground. Condry complied, and Gibson handcuffed him.

Gibson took the victim's car, drove back to the victim's home, and ransacked it in search of drugs and money. She took approximately $200 worth of crack cocaine and then returned to the motel. When she entered the room,

_____

for new trial in January 2006. That motion was amended three times and, after a hearing in August 2013, the motion was denied on February 3, 2014. A timely notice of appeal was filed on February 17, 2014. The appeal was docketed to the September 2014 term of this Court and was thereafter submitted for decision on the briefs.

Condry was bound and gagged. On Appellant's orders, Gibson went to a convenience store in close proximity to the Tree to ascertain whether anyone was looking for Condry, and two people approached her to ask of his whereabouts. Gibson used Condry's phone to call Appellant to inform him of these inquiries.

When Gibson returned to the motel, she and Appellant discussed the fact that various individuals at the Tree knew her or would recognize her as having been with the victim that night, and Appellant told Gibson they would have to kill Condry. The pair put Condry, still bound and gagged, in the trunk of Appellant's car and drove out of Dothan. On a bridge on Highway 91 at the Georgia-Florida state line, Appellant stopped the car. Appellant and Gibson removed Condry from the car and tied him to a deflated spare tire using a ripped red shirt. On Appellant's orders, Gibson put a gun to Condry's head and shot him, and the pair then heaved his body over the bridge into the river below.

Two days later, the victim's body was discovered, still tied to the tire, in the Chattahoochee River. The cause of his death was determined to be a gunshot to the head and possible drowning. At the time the victim was found, he was still handcuffed, and his hands and feet were bound with strips of cloth

3

and duct tape. On the Georgia side of the Highway 91 bridge, investigators discovered a bullet casing and blood spot, which was later determined to be that of the victim. The victim's car was later discovered at the American Inn. In the room rented by Appellant and Gibson were torn bed sheets matching those used to bind the victim and a wash cloth that was identical to the wash cloth used to gag the victim.

The victim's sister, who had been at the Tree on the night of the murder, identified Gibson as having been with her brother at the Tree that night. This witness also reported that Gibson had been accompanied at the Tree by a man driving a white "box-type" Oldsmobile with a Georgia license plate. Appellant's car, which matched this description, was discovered during the investigation, burned and abandoned in a junkyard.

Investigators located Gibson and questioned her; she confessed and was arrested. Appellant was not found until a few weeks later, when police located him in a New Jersey apartment where his father resided. In a search of the apartment, investigators found in the pocket of a pair of Appellant's shorts a gold necklace with an eagle pendant. The victim's sister-in-law identified this necklace as belonging to her and testified that she had loaned it to the victim,

4

whom she had observed wearing the necklace a few days prior to the murder.

Appellant made incriminating statements to New Jersey authorities and the GBI, in which he claimed that he and Gibson were using drugs on the night of the crimes and that it was Gibson that shot the victim. He admitted that he and Gibson had planned to rob a drug dealer. He also admitted that afterwards he fled to Florida and then to New Jersey.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Appellant contends, however, that the State's case was based on the uncorroborated testimony of Gibson, an admitted accomplice, and was thus insufficient to sustain his conviction. See former OCGA § 24-4-8 (in felony cases, testimony of an accomplice is alone insufficient to convict).[2] We disagree. Though it is true that Gibson supplied the chronological narrative describing the crimes, this testimony was amply corroborated in material respects by phone records, physical evidence, and the

---

[2] Under the new Georgia Evidence Code, effective for trials conducted on or after January 1, 2013, this language is now codified at OCGA § 24-14-8.

5

testimony of other witnesses. Most importantly, the participation of Appellant in both the planning of the robbery and the execution of the murder and other crimes was corroborated by his own statements to police, his possession of the necklace worn by the victim, and his flight in the days after the crimes. See Crawford v. State, 294 Ga. 898, 901 (1) (757 SE2d 102) (2014) (to corroborate an accomplice's testimony, State must adduce "some independent evidence tending to show that the defendant himself was a participant in the crimes"). The evidence here was thus clearly sufficient to sustain Appellant's convictions.

2. Appellant next contends that his trial counsel rendered constitutionally ineffective assistance in several respects. To establish ineffective assistance, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of his trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745

SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a) Appellant claims that trial counsel were generally unprepared to try his case. In support of this generalized assertion, Appellant cites a litany of alleged shortcomings in counsel's conduct of the trial but makes no effort to show that such conduct was the product of anything other than reasonable trial strategy or to establish that any of these shortcomings, individually or in the aggregate, had any effect on the outcome of the trial. The record reflects that Appellant had retained a seasoned trial attorney, who was assisted by his daughter, who herself had been practicing law for eleven years.

In support of his claim of general ineffectiveness, Appellant highlights the health problems lead counsel had been suffering during the time period leading

up to trial. The record reflects, however, that counsel stated in his place in a pretrial conference that his physician had determined these problems did not affect his cognitive abilities or mental acuity. The trial court, in considering the impact of counsel's health problems, noted specifically that counsel had done substantial work on the case in the pretrial phase, but also informed Appellant that the decision whether to continue counsel's representation in the case rested with Appellant. Though Appellant expressed doubts at various points in the case as to whether to terminate counsel's representation, he ultimately declined to do so. Due to Appellant's inability to demonstrate deficient performance or prejudice owing to counsel's health problems or to otherwise substantiate his assertion that counsel failed to prepare adequately for trial, this enumeration must fail.

(b) Appellant claims that trial counsel rendered ineffective assistance in failing to challenge venue. Noting that the victim's body was discovered on the Florida side of the Chattahoochee River, Appellant asserts that there was no evidence that the victim died or even sustained fatal injuries in the State of Georgia. Contrary to Appellant's assertion, however, a challenge to venue would likely have failed, given the evidence supporting a finding that the fatal

gunshot was inflicted on the Seminole County, Georgia side of the Highway 91 bridge. See OCGA § 17-2-3 (where crime committed on boundary line with another state, State of Georgia shall have jurisdiction unless other state makes a demand for the accused as a fugitive from justice); OCGA § 17-2-2 (c) (criminal homicide shall be considered to have been committed in the county where cause of death inflicted); see also Tankersley v. State, 261 Ga. 318 (8) (404 SE2d 564) (1991) (where victim was shot and drowned, venue proper in county in which victim was shot because shooting, if not the cause of death, directly and materially contributed to the subsequent cause of death). Because counsel cannot be deemed ineffective for failing to make a meritless objection, see Wesley, 286 Ga. at 356, this enumeration must fail.

(c) Appellant next contends counsel were ineffective for failing to seek severance of the felon-in-possession count of the indictment, which was supported at trial with proof of Appellant's previous convictions for theft by taking and cocaine possession. Even assuming arguendo that counsel performed deficiently in failing to seek bifurcation of this count, Appellant cannot establish prejudice, given his admissions, in his statements to investigators, that he conspired with Gibson to plan the armed robbery, used drugs on the day of the

9

crimes, was present for the murder, participated in disposing of the body, and fled to two different states afterwards. Also undercutting a finding of prejudice is the fact that the trial court gave the jury a limiting instruction regarding the narrow purpose for which it could consider the evidence of Appellant's prior convictions. Accordingly, this enumeration lacks merit.

(d) Appellant next contends that trial counsel were ineffective for failing to request a <u>Jackson-Denno</u>[3] hearing to assess the voluntariness of Appellant's statement to Georgia law enforcement authorities. However, such a hearing was in fact conducted on June 6, 2002, at the conclusion of which the trial court found Appellant's statement to have been freely, knowingly, and voluntarily given. This enumeration, therefore, is meritless.

(e) Appellant asserts that counsel were ineffective for failing to move to dismiss the traverse jury pool after a prospective juror commented on his belief that Appellant was guilty. At the outset of voir dire, the trial court asked the jury panel whether anyone had for any reason formed "any opinion as to the guilt or innocence of Steve McDonald." One prospective juror responded,

---

[3] <u>Jackson v. Denno</u>, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

stating that he had "heard a lot of stuff about" the crimes and had "already made my mind up. I think he's guilty myself." After an unreported bench conference, defense counsel moved to strike the juror for cause, which was granted. Appellant now claims that the entire jury panel was tainted by this remark and that counsel were ineffective for failing to move for a mistrial or for postponement to impanel a new set of jurors.

Counsel clearly did not perform deficiently in failing to move for a mistrial, as a mistrial motion is not ripe until after a jury has been impaneled and sworn. See Sharpe v. State, 272 Ga. 684 (5) (531 SE2d 84) (2000). As to the failure to move to excuse the panel, we find neither deficient performance nor prejudice, because the trial court, on the heels of the remark, again questioned the remaining jurors about their impartiality, and none indicated that they harbored any prejudice or bias either for or against Appellant. See Cotton v. State, 279 Ga. 358 (4) (613 SE2d 628) (2005) (no error in failing to excuse jury panel where trial court inquired whether errant remark had affected remaining jurors' impartiality). In addition, defense counsel subsequently confirmed during their questioning of the panel that none of the prospective jurors had gained any knowledge about the case from any source which would tend to

11

influence their opinion about Appellant's guilt. These measures by the trial court and defense counsel were sufficient to ensure that the offending remark had not tainted the remaining members of the jury panel. See generally Norton v. State, 263 Ga. 448 (2) (435 SE2d 30) (1993) (potential jurors' knowledge as to others' opinions about the defendant's guilt does not automatically disqualify them).

(f) Appellant also contends counsel were ineffective for failing to seek suppression of the physical items — in particular, the gold necklace and pendant stolen from the victim — seized from his father's New Jersey home. Though Appellant contends these items were unlawfully seized incident to his arrest, this claim fails insofar as the items were actually seized pursuant to a search warrant, the validity of which has never been challenged.

3. Appellant next contends that the trial court erred in refusing his request to represent himself.

> Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. [Cits.] An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation. [Cits.]

<u>Thaxton v. State</u>, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). Here, Appellant informed the court at the outset of the <u>Jackson-Denno</u> hearing less than two weeks before trial that he wished to represent himself. The trial court then engaged in a colloquy with Appellant to ascertain his understanding of the charges he faced, possible sentences, and basic trial procedures, during which, in response to one of the court's questions, Appellant acknowledged that he would need counsel's assistance. The trial court deferred ruling on Appellant's request pending further research and deliberation. However, no ruling was ultimately made, nor was one necessary, as Appellant apparently had a change of heart: immediately prior to voir dire, counsel confirmed on the record in Appellant's presence that Appellant did in fact wish for them to represent him. Appellant thus abandoned his request to represent himself and cannot now assert error on this basis.

4. Appellant also challenges the composition of the jury pool from which his jury was drawn, contending that the State cannot prove that the jury pool was sufficiently representative of the composition of Seminole County as reflected by the 2000 census. Having made no challenge to the composition of the jury

array at trial, Appellant has waived this objection on appeal. Rosser v. State, 284 Ga. 335, 337 (3) (667 SE2d 62) (2008).

5. Though we find no error with respect to the jury's verdicts, we have noted an error with regard to the merger of certain counts for judgment and sentencing. See Hulett v. State, 296 Ga. 49 (2) (766 SE2d 1) (2014) (merger error, even if it is not raised by the parties, may be addressed by appellate court sua sponte). As noted in footnote 1, supra, the trial court imposed a life sentence for malice murder and then purported to "merge" all remaining verdicts, with the exception of those for firearm possession, into the malice murder verdict. As to the three felony murder counts, the trial court merely used incorrect nomenclature, as these verdicts did not "merge" into the malice murder verdict but rather were vacated by operation of law. See Hulett, 296 Ga. at 53 (when valid guilty verdict is returned on both malice murder and felony murder of the same victim, defendant should be sentenced for malice murder, and alternative felony murder verdicts stand vacated by operation of law). With the felony murder verdicts vacated, the three remaining felonies on which a guilty verdict was reached – armed robbery, false imprisonment, and theft by taking – must be evaluated to determine whether any of these verdicts merged as a matter of fact into the malice murder. See id.

> The test for determining whether one crime is included in another, and therefore merges as a matter of fact, is the "required evidence" test — whether conviction for one of the offenses is

established by proof of the same or less than all the facts required to establish the other crime[.]

Grissom v. State, 296 Ga. 406, 410 (1) (768 SE2d 494) (2015). Here, none of the three remaining verdicts merged as a matter of fact into the malice murder: malice murder requires proof of, among other things, the victim's death, a fact which is not required to support any of the three remaining counts; armed robbery, theft by taking, and false imprisonment all require proof of facts — the taking of property, the detention of the victim — not required to establish malice murder. See OCGA §§ 16-8-41 (a) (armed robbery), 16-8-2 (theft by taking), 16-5-41 (a) (false imprisonment).

We do find, however, that the theft by taking verdict merged into the armed robbery count. Both of these counts charged Appellant with the taking of the necklace and pendant worn by the victim. Where the indictment charges both armed robbery and theft arising from a single transaction, "theft by taking does not require proof of any facts separate from those required for armed robbery." Wells v. State, 294 Ga. App. 277, 280 (1) (b) (668 SE2d 881) (2008). Thus, the theft by taking must be merged into the armed robbery verdict.

Accordingly, we vacate the sentencing order to the extent that it "merged" the felony murder, armed robbery, theft by taking, and false imprisonment verdicts into the malice murder verdict. The felony murder verdicts were vacated by operation of law, and, on remand, the trial court is directed to merge

15

the theft by taking verdict into the armed robbery verdict, and to impose lawful sentences on the remaining armed robbery and false imprisonment verdicts. See Grissom, 296 Ga. at 410 (1); Hulett, 296 Ga. at 55-56.

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

Decided March 2, 2015.

Murder. Seminole Superior Court. Before Judge Bishop.

The Smith Group, Gregory D. Smith, for appellant.

T. Craig Earnest, District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.