**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0195. HERRINGTON v. THE STATE.

PHIPPS, Presiding Judge.

While represented by trial counsel, Johnny Herrington was found guilty of possession of an illegal weapon (sawed-off shotgun),[1] giving false information to a law enforcement officer,[2] and possession of a firearm by a convicted felon.[3] He appeals the convictions, contending that the trial court erred by denying him the right

---

[1] OCGA §§ 16-11-121 (5) (pertinently defining "sawed-off shotgun" as "a shotgun . . . having one or more barrels less than 18 inches in length or if such weapon as modified has an overall length of less than 26 inches"); 16-11-122 (pertinently prohibiting the possession of a sawed-off shotgun).

[2] OCGA § 16-10-25 ("A person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor.").

[3] OCGA § 16-11-131.

to represent himself at trial, and by determining that he was not denied effective assistance of trial counsel. We affirm.

1. Herrington contends that the trial court erred by denying him the right to represent himself at trial. Because Herrington did not unequivocally assert the right to represent himself before trial, this contention is without merit.

> Both the federal and state constitutions guarantee a criminal defendant the right to self-representation.[4] An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation.[5]

On the morning of trial, before the jury was impaneled, and while he was being represented by counsel from the public defender's office, Herrington announced to the court, "I would like to replace my counsel."

The court asked Herrington who he had hired to replace his attorney. Herrington replied, "I don't have one." The court replied that the case was going to

---

[4] See *Faretta v. California*, 422 U. S. 806 (95 SCt. 2525, 45 LE2d 562) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII.

[5] *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990).

trial that morning, and that Herrington could either represent himself or "bring in" another attorney. Herrington said, "I will represent myself."

The court then explained some of the dangers of self-representation, inquired as to Herrington's reasons for dissatisfaction with his attorney and his possible defenses to the charges, and asked the state about the charges in the case. The court then announced:

> You may fire [the defense attorney] and represent yourself, you said you already want to do that, and that's against my advice. I am strongly advising you not to, but you have already told me you don't know the law. You already told me you don't know what possible defenses you have.
>
> . . .
>
> Well, you are the boss here, Mr. Herrington. You can represent yourself. I am not going to stop that. I am going to advise you strongly against it as much as I can and tell you it's really against my advice that you do so.
> . . .

The court reiterated the dangers of self-representation. The following then transpired.

THE COURT: Okay. Then you are ready to represent yourself?

3

[HERRINGTON]: I want to know that I am going to have adequate representation.

THE COURT: You have got adequate representation.

[HERRINGTON]: I asked [defense attorney] to get me a change of venue because of your bias towards me. . . .

. . .

THE COURT: We are going to trial today. My only question to you is whether you want to represent yourself –

[HERRINGTON]: Do you think you can represent me?

[DEFENSE COUNSEL]: Yes, sir, I can.

The court then instructed defense counsel "to go and meet with him for a few moments," after which "we are coming back out here . . . to try this case." Thereafter, with no more discussion of Herrington's trial representation and with the same counsel representing Herrington, the parties discussed other pre-trial matters. The case proceeded to trial, with defense counsel representing Herrington.

"[Herrington] did not make an unequivocal assertion of his right to represent himself prior to the commencement of his trial. [To the extent some of ] his remarks may be construed as an expression of dissatisfaction with his attorney, they cannot be construed as an assertion, much less an unequivocal assertion, of his right to

4

represent himself."[6] To the extent Herrington expressed at the beginning of the colloquy a desire to represent himself, he thereafter "apparently had a change of heart[, and] abandoned his request to represent himself."[7] Accordingly, his contention is without merit.[8]

2. Herrington contends that the court erred by determining that he was not denied effective assistance of trial counsel. He asserts that trial counsel rendered ineffective assistance because she failed to object to evidence of two prior convictions in cases in which Herrington had not been represented by counsel. At issue is the state's introduction of evidence of Herrington's misdemeanor convictions in 1991 and 1998 of giving false information (false name) to a police officer, which evidence was admitted for the stated purpose of showing Herrington's intent, bent of

---

[6] *Thaxton*, supra.

[7] *McDonald v. State*, 296 Ga. 643, 649 (3) (770 SE2d 6) (2015).

[8] See *Danenberg v. State*, 291 Ga. 439, 440-441 (2) (729 SE2d 315) (2012) (trial court did not wrongfully deny appellant's right to represent himself at trial, because appellant's request on the morning of trial to dismiss his trial counsel and replace them with retained counsel, a public defender, or himself, was not an unequivocal assertion of his right to represent himself).

mind or course of conduct.[9] The record does not indicate that Herrington was represented by counsel in either of the prior cases.

> To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.[10]

On appellate review of that claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[11]

---

[9] See generally former OCGA § 24-9-84.1 (a) (2), (3) (2011). Because this case was tried prior to January 1, 2013, Georgia's old evidence code applies here. See *Bragg v. State*, 295 Ga. 676, 677, n. 3 (763 SE2d 476) (2014).

[10] *Kitchens v. State*, 289 Ga. 242, 243 (2) (710 SE2d 551) (2011) (citation omitted).

[11] *Odle v. State*, 331 Ga. App. 146, 150-151 (770 SE2d 256) (2015).

Even assuming that the prior convictions were inadmissible,[12] and that trial counsel performed deficiently by not objecting to the introduction of such evidence,[13] Herrington has not shown that he was prejudiced thereby.[14] In determining whether counsel's error resulted in the required prejudice,

---

[12] See *Clenney v. State*, 229 Ga. 561, 564 (4) (192 SE2d 907) (1972) (citing *Gideon v. Wainwright*, 372 U. S. 335 (83 SCt 792, 9 LE2d 799) (1963), and *Burgett v. Texas*, 389 U. S. 109, 115 (88 SCt 258, 19 LE2d 319) (1967), the Court held that evidence of the appellant's previous convictions, in which he was denied the benefit of counsel, cannot be used against him either to support guilt or enhance punishment for another offense); see also *Scott v. State*, 250 Ga. 195, 198 (297 SE2d 18) (1982); *Mitchell v. State*, 136 Ga. App. 390, 391 (3) (221 SE2d 465) (1975) (the use of convictions constitutionally invalid under *Gideon v. Wainwright*, supra, is prohibited either to support guilt or enhance punishment for another offense).

[13] See *Mitchell*, supra at 392 (3) (appellant's contention that the state had improperly elicited evidence of his prior convictions without showing that he either had counsel or had waived counsel in such prior proceedings was not reviewable on appeal, because defense counsel had failed to object to the admission of the evidence in the trial court).

[14] See generally *Church v. State*, 210 Ga. App. 670, 672 (4) (436 SE2d 809) (1993) (rejecting appellant's *Burgett v. Texas*-based argument that the trial court had erred in considering her prior uncounseled convictions in sentencing, where there was no contention that the court had sentenced her in conjunction with the previous convictions); *Miller v. State*, 296 Ga. 9, 12-13 (4) (b) (764 SE2d 823) (2014) (affirming trial court's rejection of appellant's ineffective assistance claim, stating: "Assuming that [the hearsay] evidence was inadmissible. . . , [appellant] has not shown how he was prejudiced"; the evidence complained of was cumulative of other testimony, and the evidence thus supported the trial court's conclusion that there was no reasonable probability that the failure of defense counsel to object to the admission of the evidence at issue affected the outcome of the trial).

a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[15]

Viewed in the light most favorable to the verdict,[16] the trial evidence showed the following. A law enforcement officer testified that on March 29, 2011, he and other officers had gone to an address looking for a fugitive sex offender, N. B., after having been informed that N. B. was living in a tent on the property. When officers

---

[15] *Strickland v. Washington*, 466 U. S. 668, 695-696 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).

[16] *See Scandrett v. State*, 293 Ga. 602 (1) (748 SE2d 861) (2013) (where the only issues on appeal from criminal conviction were whether the trial court had admitted improper evidence and the appellant had received ineffective assistance of trial counsel, the Court viewed the evidence in the light most favorable to the verdict).

8

arrived, there was no tent on the property, but there was a house and a trailer. Officers went to the trailer to inquire about N. B. They knocked on the door and, a few minutes later, Herrington answered it. Herrington explained that he had been asleep, and he appeared as though he had just awakened. When asked if he knew N. B., Herrington replied that he did, though he had not seen him in "a little while, a couple of weeks, maybe." Herrington stated that he was alone in the trailer. Officers asked Herrington to identify himself, and Herrington handed an officer an identification card bearing the name "Jeffrey Curvin." In the officer's opinion, the photograph on the identification card did not resemble Herrington and, when the officer asked Herrington for the date of birth on the card, he was unable to provide it. Another officer was called to the scene, and he was able to identify Herrington, whom he had known from an encounter "a week prior."

The officers searched the trailer to confirm that N. B. was not present. Only one bedroom in the trailer had electrical power and was habitable; the bed in that bedroom appeared to have been slept in. On the bed, in plain sight, was a bank bag. The barrel of a shotgun was sticking out of the bag. The barrel was 7 1/4 inches long, and the entire firearm was "[r]ight at a foot long." The shotgun contained the necessary

working parts. Herrington told the officers that the shotgun was not his, stating that one of the officers must have "planted it on" him.

The man who owned the property and the trailer, T. D., testified that Herrington had been doing renovation work on the trailer in March 2011, and that he had given Herrington permission to stay in the trailer. The owner testified that he (T. D.) had not stored any belongings, including any firearms, in the trailer. The trailer had been empty, but Herrington "had been bringing some things in."

Taking the stand in his own defense, Herrington testified that Jeffrey Curvin (whose identification card he had handed to officers as proof of his own identity) was his cousin's son; that the identification card was not his; and that N. B. had fled out the trailer's back door as the officers arrived or upon learning that they were en route. Herrington testified that he had been hesitant to open the trailer door for the officers because he was afraid they wanted him for a probation violation; he did not own and did not know who owned the shotgun; and he had not seen the shotgun before the officers showed it to him. Herrington testified that he had been convicted in 2005 for fleeing and eluding officers; and, he added, "I've got a criminal record and I've done things that, you know, I am not proud of, but I've done my time. I've . . . pled guilty for the things that I know I was guilty of and I did my time for them."

10

Given the evidence in this case, there is not a reasonable probability that the outcome of Herrington's trial would have been different had counsel objected to evidence of the two prior false information convictions and had the court excluded said evidence.[17] Accordingly, Herrington's ineffective assistance of counsel claim fails.[18]

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur.*

---

[17] See generally *Miller*, supra; *Wells v. State*, 295 Ga. 161, 166 (2) (a) (758 SE2d 598) (2014).

[18] See *Wells*, supra at 166 (2) (b).