**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 16, 2019**

# In the Court of Appeals of Georgia

A19A0888. CADE v. THE STATE.

REESE, Judge.

Following a bench trial, the Superior Court of Lincoln County found Raekwon Cade ("the Appellant") guilty of aggravated battery,[1] aggravated assault,[2] possession of a firearm by a convicted felon,[3] and two counts of possession of a firearm during the commission of a felony.[4] The Appellant was sentenced to serve a total of 35 years, with the first 25 years to be served in confinement and the remainder on probation, and to pay a $2,000 fine. He files this appeal, appearing pro se, arguing that he did

---

[1] OCGA § 16-5-24 (a).

[2] OCGA § 16-5-21 (a) (2).

[3] OCGA § 16-11-131 (b).

[4] OCGA § 16-11-106 (b) (1).

not voluntarily waive his rights to a jury trial or representation by legal counsel. He also contends that the trial court erred by: allowing the State to give a trial witness a document to review; denying the Appellant his right to a timely waiver of counsel; and 4) ordering him to complete the incarceration portion of his sentence before allowing him to serve the remainder of his sentence on probation. For the reasons set forth infra, we affirm.

Viewing the evidence in the light most favorable to the verdict,[5] the record shows that, on September 10, 2016, Dequavis Turner and a friend got into an argument via social media with the Appellant's sister, Markesia Curry ("Curry"). Curry traveled to Turner's home, yelled at the men, and shoved Turner's friend. Curry's mother, Portia Curry,[6] went to Turner's home, argued with the men, and threatened to beat Turner's friend with a metal pipe. Later that day, while Turner was sitting on his porch, he saw the Appellant walking down the road toward him, holding a gun. Turner testified that he tried to run away when he saw the Appellant. According to Turner, the Appellant caught him, hit him twice in the face with the

---

[5] See *Davis v. State*, 326 Ga. App. 279, 281 (754 SE2d 815) (2014).

[6] Neither Markesia Curry nor Portia Curry are parties to this appeal.

2

gun, and kicked him in the mouth, resulting in injuries to Turner's eye and the loss of two front teeth.

Following his conviction, the Appellant filed a motion for new trial. After a hearing, the trial court denied the Appellant's motion, and this appeal follows.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

With these guiding principles in mind, we turn to the Appellant's specific claims of error.

1. Before reaching the merits of the Appellant's contentions, however, we note that his brief does not contain proper citations to the parts of the record or transcripts, which is essential to our consideration of his enumerated errors.[8] Pro se status does

---

[7] *Renfro v. State*, 348 Ga. App. 615 (824 SE2d 75) (2019) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)) (citation and punctuation omitted).

[8] See Court of Appeals Rule 25 (a) (1), (c) (2) (i).

not relieve a party from the "obligation to comply with the substantive and procedural requirements of the law, including the rules of this Court."[9]

> The rules of this [C]ourt are not intended to provide an obstacle for the unwary or the pro se appellant. Briefs that do not conform to the rules regarding enumerations of error, structure of briefs, argument, or citation of authorities, as [the Appellant's] fails to do, are not merely an inconvenience or grounds for refusing to consider a party's contentions. Such briefs hinder this [C]ourt in determining the substance and basis of an appellant's contentions both in fact and in law and may well prejudice an appellant's appeal regardless of the amount of leniency shown. Nevertheless, we will address [the Appellant's] arguments, insofar as we are able to discern them from his brief.[10]

2. The Appellant argues that he did not knowingly, intelligently and voluntarily waive his right to a jury trial. We find no clear error.

> A defendant's right to trial by a jury is a fundamental constitutional right that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. A defendant's consent to a trial without a jury need not be in any particular, ritualistic form; the trial court need only conduct an inquiry of the accused on the record so

---

[9] *West v. West*, 299 Ga. App. 643, 644 (683 SE2d 153) (2009) (punctuation and footnote omitted).

[10] *Williams v. State*, 318 Ga. App. 744, 744-745 (734 SE2d 745) (2012) (citation and punctuation omitted).

4

as to ensure that the waiver is knowing, voluntary and intelligent[.] The trial court should ask the defendant sufficient questions on the record to ensure that the defendant's waiver is knowing, voluntary, and intelligent.

When a defendant challenges his purported waiver of the right to a jury trial, the State bears the burden of showing that the waiver was made both knowingly and intelligently, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made. Such extrinsic evidence may include testimony by or an affidavit from trial counsel about his specific recollections; routine or standard practices; and evidence regarding the defendant's intelligence and cognitive ability.[11]

"[T]he question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this [C]ourt unless such determination is clearly erroneous."[12]

---

[11] *Williams v. State*, 336 Ga. App. 442, 446-447 (2) (b) (784 SE2d 808) (2016) (citation and punctuation omitted).

[12] *Seitman v. State*, 320 Ga. App. 646 (740 SE2d 368) (2013) (citation and punctuation omitted).

The record shows that the Appellant and Portia Curry were indicted together on various charges arising from the September 2016 incident. On April 10, 2017, the trial court held a hearing at which Portia Curry and the Appellant were present. After Portia Curry waived her right to a jury trial, the trial court tentatively accepted her waiver. The following colloquy then occurred:

> [COURT]: I'm going to ask [the Appellant] the same questions, if he wants a jury trial then both of you would have a jury trial because you have been indicted together and both of you at that point in time, unless you are both waiving jury trials, you will both be tried with a jury that would begin Monday or sometime next week.
>
> Mr. Cade, I'm going to ask you some of the same questions that I asked Ms. Curry. Now, [your trial counsel] has indicated that you also wish to waive your constitutional right to [a] trial by jury; is that correct?
>
> [A (by the Appellant)]: Yes, sir.
>
> [Q]: Okay. You are charged with several felonies, you have the right to have twelve jurors determine your guilt or innocence. All twelve have to be unanimous in their decision that the State proves the case beyond a reasonable doubt before you can be convicted. If you waive that right, the Judge will act as both judge and jury. If the Judge is convinced beyond a reasonable doubt, then it will be the same Judge that will impose sentence. So, you're going from the State having to convince all twelve jurors to the State having to convince one person beyond a

reasonable doubt and that would be the Judge. The standard is still the same, it's just that there's eleven less people to convince.

[A]: And Judge Dunaway would have to run this case if I want a bench trial?

[Q]: Judge Dunaway has retired. . . . I believe I'm the one holding court next week. Okay? So the jury trials will begin next week and the bench trials will be in June, beginning June 19th.

[A (by the Appellant)]: Yes, sir.

[Q]: All right. With that understanding, is it still your desire to waive your right to a jury trial?

[A]: Yes, sir.

[Q]: You understand you don't have to do it just because Ms. Curry does it? Do you understand that?

[A]: Yes, sir.

[Q]: But it will require both of you to do it for either one of you to have a bench trial.

[A]: Yes, sir.

[Q]: Okay. So you wish to waive jury trial; is that correct?

[A]: Yes, sir.

. . .

[Q]: All right. Let the waiver be signed.

In denying the Appellant's motion for new trial, the trial court stated in its order that "[t]he record clearly demonstrate[d] that [the Appellant] personally and intelligently

participated in the wavier of his right to a jury trial and that he did so in a knowing, voluntary, and intelligent manner."

Here, the trial court did not err in finding that there was sufficient evidence of a waiver of the Appellant's right to a jury trial.[13] At the motion for new trial hearing, trial counsel testified that the Appellant was asked "about whether [he] understood that [he had] a valuable constitutional right to a jury trial, and whether [he] understood that the prosecution[ was] willing to and prepared to try [his] case . . . and [the Appellant] indicated [that he] want[ed] to waive [his] right to a jury trial[.]" When questioned whether it appeared that the Appellant understood the jury trial waiver proceedings, trial counsel testified that the Appellant "did not give any indication that he didn't understand, nor was there any vacillation on his part." Further, the record contains a consent order signed by the Appellant, his trial counsel, the prosecutor, and the trial court on the same day as the pre-trial waiver hearing.

---

[13] See *Seitman*, 320 Ga. App. at 649 (The Court affirmed the trial court's ruling that the defendant waived his right to a jury trial because the trial court's decision was not clearly erroneous, "[b]ased upon the totality of the circumstances presented[.]").

Based upon the totality of the circumstances presented here, the trial court's conclusion that the Appellant knowingly, voluntarily, and intelligently waived his right to a jury trial was not clearly erroneous.[14] Thus, this argument is without merit.

3. The Appellant argues that he did not knowingly and intelligently waive his right to counsel either prior to trial or during trial. We disagree.

> Although a criminal defendant has a Sixth Amendment right to assistance of counsel at trial, the defendant also has the constitutional right to represent himself, as long as he voluntarily, knowingly, and intelligently elects to waive the right to counsel. To establish a valid waiver, the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will show that he knows what he is doing and his choice is made with eyes open.[15]

---

[14] *Seitman*, 320 Ga. App. at 647 ("[T]he record must affirmatively show that the defendant made the decision to waive his right to a jury trial, or at least that he . . . agreed with the decision.") (citation and punctuation omitted); cf. *Jones v. State*, 294 Ga. App. 169, 170 (1) (670 SE2d 104) (2008) (The State failed to demonstrate that the defendant waived her right to a jury trial where the record did not include a colloquy between the trial court, a signed waiver of a jury trial by the defendant, or any supporting extrinsic evidence.).

[15] *Renfro v. State*, 348 Ga. App. 615, 616-617 (2) (824 SE2d 75) (2019) (citations and punctuation omitted).

It follows that "[a] defendant's waiver of his right to counsel is valid if the record reflects that the defendant was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[16]

Further,

> [i]t is not required that the trial court probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made. Indeed, the defendant's technical legal knowledge is irrelevant to the question of whether he validly waives his right to be represented by counsel. The test is not whether the accused is capable of good lawyering, but whether he knowingly and intelligently waives his right to counsel. Although the State has the burden of showing that a defendant received sufficient information and guidance from the trial court to make a knowing and intelligent waiver of the right to trial counsel, a trial court's ruling on this issue is reviewed only for an abuse of discretion.[17]

(a) *Prior to trial*.

The record demonstrates that, prior to trial, the Appellant abandoned his motion to represent himself. On the day of trial, prior to its commencement, the following colloquy occurred outside the presence of the prosecutor:

---

[16] Id. at 617 (2) (citation and punctuation omitted).

[17] *Renfro*, 348 Ga. App. at 617 (2) (citations and punctuation omitted).

[COURT]: Mr. Cade, you mailed this Court a motion to represent yourself basically in this case, and I had responded to that[,] telling you that I would hear you on that motion today. Your case is scheduled for a bench trial right now; okay? Do you wish to continue with your motion to be self-represented? You know you have been appointed [a public defender], to represent you in this case. What is your desire at this point?

[A (the Appellant):] Right now at this point, I would like to put my testimony on the record before we begin. I feel like this may better serve judicial economy right now. . . .

[Q]: Well, if you wish to testify during the course of the trial you can do that, but that testimony will be subject to examination by [trial counsel] if he [ ] represents you, and it will also be subject to cross-examination by the district attorney[.] And you understand that if [you] do that, anything you say could be used against you. You would basically be giving up your right not to incriminate yourself. Do you understand that?

[A]: Yes, sir. But I understand that today . . . it was scheduled for today for this motion for me with the release of [trial counsel]. My understanding was not a bench trial[,] if I release him and become my own attorney, I'm going to need more time to go over my case.

[Q]: No, the trial is going to happen today. All of the information has been provided. The discovery has all been provided.

. . .

[TRIAL COUNSEL]: Everything that the District Attorney's Office has provided to me I have provided to [the Appellant].

11

[Q]: Right. If you desire to represent yourself[,] the [c]ourt will grant it, but . . . I'm going to ask [trial counsel] and require him to be standby counsel. You can prosecute your own defense, but I am going to require that he be standby counsel if you have any questions or if you change your mind during the proceedings. But this is the time for your trial. Today is the day.

The trial court then gave the Appellant an opportunity to speak with trial counsel. After conferring with the Appellant, trial counsel requested time to speak with the prosecutor, which the trial court granted. About 15 minutes later, the trial court asked the Appellant if he "intend[ed] to continue with [his] motion[?]" to which the Appellant responded, "[n]o, sir[.]" The trial court asked the Appellant a second time, do "you want [trial counsel] to continue his representation[?]" and the Appellant answered [y]es, sir."

Next, the trial court summoned the prosecutor back into the courtroom, and the parties attempted to negotiate a plea. After the parties prepared a plea petition, trial counsel announced to the trial court that the Appellant would plead guilty. During the plea proffer, the trial court questioned the Appellant as follows:

[Q]: How old are you[?]
[A]: Twenty-one.
[Q]: What is the highest grade level of education you have completed?
[A]: Eleventh.

12

[Q]: Do you read and write the English language?

[A]: Yes, sir.

[Q]: Are you a U. S. citizen?

[A]: [no response]

[Q]: Were you born in the United States of America?

[A]: Yes, sir.

[Q]: All right sir, you're a U. S. citizen. Are you currently on probation or parole?

[A]: Probation. Well, I haven't even gotten out and finished up.

. . .

[A (by trial counsel)]: Your, Honor, his probation was revoked based on these charges. . . . I think he started his sentence.

[Q]: All right. Are you now under the influence of any drug, narcotic, alcoholic beverage, marijuana, or prescription drug of any sort?

[A (by the Appellant)]: No, sir.

[Q]: To your knowledge, do you suffer from any mental or emotional disability?

[A]: No, sir.

[Q]: Have you ever been treated by a psychiatrist, psychologist, mental health professional, or confined to a mental health hospital?

[A]: No, sir.

[Q]: Do you have a weapons carry license?

[A]: No, sir.

[Q]: You are represented in this case by [trial counsel] of the Public Defender's Office?

[A]: Yes, sir.

13

At that point, the Appellant began to question the trial court about the plea, and the trial court responded, "[l]isten, . . . you don't have to plead guilty. You can plead not guilty and we can have a trial. . . . Do you want to go forward with this plea or not?" The Appellant responded: "Let's go with the plea."

When the trial court asked him if he had sufficient time to discuss his case with trial counsel, the Appellant stated he had not. When the Appellant informed the trial court that his case had been pending for 15 months, the trial court told the Appellant, "[i]t seems to this [c]ourt you're up here trying to play games." Shortly thereafter, the Appellant stated to the trial court; "You know what, Your Honor, let's go to trial." The trial commenced without objection from the Appellant.

Based on the foregoing, the trial court did not abuse its discretion in concluding that the Appellant abandoned his motion for self-representation prior to the start of his trial.[18] Therefore, this argument is without merit.

(b) *During trial.*

---

[18] See *McDonald v. State*, 296 Ga. 643, 648-649 (3) (770 SE2d 6) (2015) (Defense counsel's confirmation, on the record, with the defendant present, that his client wished to continue to be represented by him showed that the defendant had abandoned his request to represent himself.); see also *Herrington v. State*, 332 Ga. App. 828, 830 (1) (775 SE2d 195) (2015) (Defendant's colloquy with the trial court prior to trial showed that he had changed his mind and abandoned his request to represent himself.).

After trial commenced, both parties waived their opening statements, and the State called Turner as its first witness. After the direct examination, trial counsel announced that the Appellant wanted to represent himself. The trial court told trial counsel, "[t]hat's fine, but you're going to be his standby attorney." Trial counsel responded, "I will. I'll certainly do it, Your Honor." During the motion for new trial, the Appellant questioned trial counsel about his role as standby counsel. Trial counsel testified that "the trial was a collaboration between [the Appellant] and me, and we conferred with strategies, questions, and so forth." He further averred that, during trial, he remained an active part of the case by conferring with the Appellant, helped him phrase questions, and gave the closing argument.

In its order denying the Appellant's motion for new trial, citing *Keller v. State*[19] as authority, the trial court found that the Appellant "knowingly, voluntarily, and intelligently waived his right to be represented by legal counsel during the trial." The trial court further stated that the Appellant "attempt[ed to] manipulate events to delay and draw out the trial of this matter at both times his case was scheduled for trial."

---

[19] 286 Ga. App. 292, 298 (5) (648 SE2d 714) (2007) (overruled on other grounds by *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 291 Ga. 114, 119-120 (1) (728 SE2d 189) (2012).

15

After trial has begun, an accused's request to self-represent is treated differently than if the request had been made prior to trial.[20] It is well settled that, "a defendant cannot frivolously change his mind in midstream by asserting his right to self-representation in the middle of his trial."[21]

This Court has utilized a six-part test to determine if a defendant validly chose to proceed pro se, specifically:

> such waiver must be made with an apprehension of [1] the nature of the charges, [2] the statutory offenses included within them, [3] the range of allowable punishments thereunder, [4] possible defenses to the charges and [5] circumstances in mitigation thereof, and [6] all other facts essential to a broad understanding of the matter.[22]

The Georgia Supreme Court has stated that although the six-part "would be helpful, it is not incumbent upon a trial court to ask each of the questions[.] The record need

---

[20] See *Owens v. State*, 298 Ga. 813, 814-815 (2) (783 SE2d 611) (2016).

[21] Id. at 815. (citation omitted).

[22] *McDaniel v. State*, 327 Ga. App. 673, 675 (1) (761 SE2d 82) (2014) (citation and punctuation omitted).

only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[23]

"Nor is it required that the trial court probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made. Indeed, the defendant's 'technical legal knowledge' is irrelevant to the question of whether he validly waives his right to be represented by counsel."[24] "The test is not whether the accused is capable of good lawyering – but whether he knowingly and intelligently waives his right to counsel."[25]

Here, the trial court engaged in an eight-part test under *Fitzpatrick v. Wainwright*[26] and concluded that the Appellant had validly waived his right to legal counsel as a result of the test.

Pretermitting whether the trial court properly analyzed this issue under *Fitzpatrick*, the record supports a finding that the trial court did not abuse its

---

[23] *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998); see *State v. Evans*, 285 Ga. 67, 68-69 (673 SE2d 243 (2009).

[24] *Evans*, 285 Ga. at 69.

[25] *Wayne*, 269 Ga. at 38 (2).

[26] 800 F2d 1057, 1065-1067 (II) (B) (11th Cir.1986).

17

discretion in determining that the Appellant knowingly and voluntarily waived his right to legal representation. Prior to trial, the Appellant filed a motion to represent himself. As explained in Division 3 (a), supra, on the day of trial and prior to its commencement, the Appellant abandoned his motion and indicated that he wanted to enter a plea. During the plea proffer, the Appellant's educational background and criminal history were placed on the record. The trial court explained that the Appellant did not have to plead guilty and instead could go to trial. However, the Appellant changed his mind and decided to proceed to trial with the assistance of legal representation.

Immediately prior to his trial counsel's cross-examination of the State's first witness, the Appellant told the trial court, through counsel, that he wanted to represent himself. The trial court appointed trial counsel as standby counsel.

Even if the trial court erred in permitting the Appellant to represent himself, under these circumstances, the error was harmless.[27] The record shows that standby

---

[27] See *Davis v. State*, 257 Ga. App. 500, 502 (1) (571 SE2d 497) (2002) (holding that any error was harmless where the trial court did not inform the defendant of possible punishments and the dangers of self representation prior to granting his request to proceed pro se but court-appointed counsel "provided assistance regarding procedural matters during trial, so that the defendant did not stand trial alone with no assistance or protection of his rights[ ]") (citation and punctuation omitted).

counsel actively participated in the trial, providing assistance during the questioning of witnesses, conferring with the Appellant throughout the trial, and making the closing argument.[28]

Based on the foregoing, under the facts of this case and the totality of the circumstances, we hold that "any deficiency in the trial court's warning as to the dangers of self-representation was harmless[.]"[29] It is clear that the Appellant "did not conduct the proceedings alone with no assistance or protection of his rights."[30]

(c) *During the appellate process.*

---

[28] See generally *Merritt v. State*, 222 Ga. App. 623, 624 (475 SE2d 684) (1996) ("[A] trial court may appoint standby counsel for an accused wishing to represent himself at trial, even over the defendant's objection, provided that standby counsel's role is appropriately limited. Appropriate limitation is that which ensures that standby counsel is not excessively intrusive and preserves for the pro se defendant "a fair chance to present his case in his own way.") (citation and punctuation omitted).

[29] *Cain v. State*, 310 Ga. App. 442, 444 (1) (714 SE2d 65) (2011).

[30] Id. (punctuation and footnote omitted); cf. *Davis v. State*, 279 Ga. App. 628, 631-632 (2) (631 SE2d 815) (2006) (holding that the trial court's error in allowing the defendant to proceed to trial without a valid waiver of counsel was not harmless where the defendant's court appointed standby counsel did not provide any assistance during trial).

The Appellant appears to argue that the trial court erred in conducting an untimely *Faretta*[31] hearing after his trial, but prior to his motion for new trial hearing, resulting in the appointment of appellate counsel. We find no error.

The Appellant, his trial counsel, and appellate counsel filed separate motions for new trial. The appellate counsel filed a motion for a *Faretta* hearing so the trial court could determine whether the Appellant should be allowed to represent himself on appeal. On April 11, 2018, the trial court held a *Faretta* hearing, and granted the Appellant's request to proceed pro se.

As discussed previously in Division 3 (a), supra, prior to trial, the Appellant waived his right to self-representation by stating unequivocally on the record that he wished to be represented by trial counsel. Therefore, a *Faretta* hearing was unnecessary.[32] Following trial, the Appellant submitted a new request to represent

---

[31] See *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975); *Evans*, 285 Ga. at 68 ("[B]oth the federal and state constitutions guarantee a criminal defendant the right to self-representation. To be valid, a defendant's waiver of his right to be represented by counsel must be knowingly and intelligently made. Under *Faretta* the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will establish that he knows what he is doing and his choice is made with eyes open.") (citations and punctuation omitted).

[32] See *Herrington*, 332 Ga. App. at 830 (1).

20

himself during the appellate process, which the trial court granted following a *Faretta* hearing. Thus, the Appellant's argument is belied by the record and is without merit.

4. The Appellant contends that the trial court erred in allowing the State to provide a document to a witness without first "having identified or tendered [it.]" For the reasons explained, infra, we disagree.

Although the Appellant did not object to this evidence during trial, under our new Evidence Code, appellate review of rulings related to this evidence are conducted for plain error affecting the Appellant's substantial rights under OCGA § 24-1-103 (d).[33] At trial, Turner's mother testified that she saw the Appellant walking toward her house with a gun and saw him hit Turner twice in the face. During her testimony, the State provided a document, that was not admitted into evidence, to Turner's mother without any objection by the Appellant. During the motion for new trial hearing, the Appellant did not identify the document nor proffer it.

---

[33] See OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."); *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016).

Pretermitting whether the document could have been used pursuant to OCGA § 24-6-612 (a),[34] to refresh the memory of a witness while testifying, the Appellant has not affirmatively shown that the alleged "error probably did affect the outcome below."[35] Prior to the State providing Turner's mother with the document, Turner previously testified that the Appellant, while carrying a gun, walked towards him and struck him twice in the face. "Indeed, in light of the overwhelming evidence of [the Appellant's] guilt[,] it cannot be said that any error in the admission of this other evidence likely affected the outcome below."[36]

---

[34] See OCGA § 24-6-612 (a) ("If a witness uses a writing to refresh his or her memory while testifying, an adverse party shall be entitled to have the writing produced at the hearing or trial, to inspect it, to cross-examine the witness on such writing, and to introduce in evidence those portions of such writing which relate to the testimony of the witness.").

[35] See *Gates*, 298 Ga. at 327 (3) ("[B]eyond showing a clear or obvious error, [the] plain-error analysis requires the appellant to make an affirmative showing that the error probably did affect the outcome below.") (citation and punctuation omitted).

[36] Id. at 328 (3).

4. The Appellant argues that the trial court erred in sentencing him to serve the incarceration portion of his sentence prior to serving probation and in expanding his sentence."[37] We disagree.

*(a) Sentence modification.*

OCGA § 17-10-1 (f) states in pertinent part:

Within one year of the date upon which the sentence is imposed, or within 120 days after receipt by the sentencing court of the remittitur upon affirmance of the judgment after direct appeal, whichever is later, the court imposing the sentence has the jurisdiction, power, and authority to correct or reduce the sentence and to suspend or probate all or any part of the sentence imposed. Prior to entering any order correcting, reducing, or modifying any sentence, the court shall afford notice and an opportunity for a hearing to the prosecuting attorney. Any order modifying a sentence which is entered without notice and an opportunity for a hearing as provided in this subsection shall be void.

In the instant matter, on December 13, 2017, the trial court verbally sentenced the Appellant to serve a total of 35 years, with the first 15 years "served in

---

[37] The record shows that, in August 2018, the trial court modified the Appellant's sentence as follows: on Count 3 to serve twenty years in confinement, concurrent with Count 1; as to Count 5 to serve five years in confinement, consecutive to Count 1; as to Count 7 to serve five years on probation, consecutive to Count 5; and as to Count 9 to serve five years on probation, consecutive to Count 7.

confinement, the balance [of the sentence is to be served] on circuit-wide probation." However, the written sentence executed on the same day by the trial court, ordered the Appellant to serve "a total of 35 years, with the first 25 years to be served in confinement and the remainder to be served on probation[,]" and to pay a $2,000 fine, $200 in attorney fees, and surcharges.[38] On August 20, 2018, within one year of the original sentence, the trial court issued an order correcting the Appellant's sentence to reflect that he was to serve 25 years in confinement and 10 years on probation, and serve "all of the confinement time . . . prior to the commencement of probation[,]" and pay a $2,000 fine "with all lawfully required surcharges and add-ons." The trial court further ordered that "[u]nless specifically modified herein[,] all other terms and conditions of the aforestated sentences shall remain unmodified, and in full force and effect." The record shows that prior to entering the modified sentence, the trial court provided timely notice and an opportunity to the State for a hearing, under OCGA § 17-10-1 (f).

Based on the foregoing, the trial court did not err in modifying the Appellant's sentence pursuant to OCGA § 17-10-1 (f). Thus, this argument is without merit.

---

[38] This sentence was filed in the clerk's office of the Superior Court of Lincoln County on January 3, 2018.

(b) *Consecutive sentences.*

To the extent that the Appellant argues that the trial court erred in imposing consecutive sentences, presumably referring to Counts 5, 7, and 9, his argument is without merit.

The record shows that, in the indictment, the Appellant was charged in Count 5 and Count 7 with the possession of a firearm during the commission of a felony and charged in Count 9 with the possession of a firearm by a convicted felon.[39]

> Georgia courts have held that the offense of possession of a firearm by a convicted felon does not merge with an offense charging possession of a prohibited weapon. The conduct prohibited by OCGA § 16-11-131 (b) is the receipt, possession, or transportation of "any firearm" by "any person who has been convicted of a felony." The conduct prohibited by OCGA § 16-11-106 (b) is having "on or within arm's reach of one's person a firearm during the commission of, or the attempt to commit" certain enumerated felonies. Under these statutes, an essential element of the former crime, but not of the latter, is the status of the accused as a convicted felon, whereas an essential element of the latter crime, but not the former, is the commission of a felony while in possession of a

---

[39] See OCGA §§ 16-11-131 (b); 16-11-106 (b) (1).

weapon. One crime is not "included" in the other, nor do they merge factually, because each involves proof of distinct essential elements.[40]

"The trial court had broad discretion to impose either a concurrent or consecutive sentence for possession of a firearm by a convicted felon, and the record does not show that the court made this decision under a misapprehension about the scope of its discretion."[41]

Thus, based on the foregoing, the trial court did not abuse its discretion in sentencing the Appellant to consecutive sentences in Counts 5, 7, and 9.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[40] *Clark v. State*, 206 Ga. App. 10, 11 (1) (424 SE2d 310) (1992) (citations and punctuation omitted).

[41] *Clark v. State*, 279 Ga. 243, 248 (8) (611 SE2d 38) (2005) (citations and punctuation omitted).